UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL ANTHONY THOMAS,

      Plaintiff,

    v.

WARE, AVILA,

      Defendants.

No.  2:22-v-00177-TLN-EFB (PC)

ORDER AND FINDINGS AND
RECOMMENDATIONS (ECF Nos. 68, 75)

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  His complaint raises a sole claim against both defendants, that they utilized excessive force against him in violation of his Eighth Amendment rights, and seeks monetary damages.  ECF No. 1.  Pending before the court is plaintiff's Request for Order for Audio / Video Surveillance Evidence, ECF No. 75; and defendants' Opposition thereto.  ECF No. 77.  Also pending before the court is defendants' motion for summary judgment, ECF No. 68; plaintiff's Opposition, ECF No. 74; and defendants' reply.  ECF No. 76.  For the reasons set forth herein, the court denies plaintiff's request and recommends the denial of defendants' motion.

////

////

////

////

1

**BACKGROUND**

Plaintiff's complaint, filed January 27, 2022, alleges that defendants Ware and Avila used excessive force against him while he was incarcerated at California State Prison, Sacramento,[1] in violation of his rights under the Eighth Amendment.  ECF No. 1.  Defendants filed an Answer on June 20, 2022, ECF No. 21, and, the following day, the court issued a scheduling order that included a deadline for discovery to be completed and dispositive motions to be filed.  ECF No. 22.  The court subsequently extended some of these deadlines on defendants' motions.  ECF Nos. 24, 29, 33, 41, 53.  Defendants moved to compel discovery responses on June 5, 2023, which the court granted over plaintiff's objection.  ECF Nos. 30, 48.  On January 31, 2024, defendants moved to dismiss the complaint based on plaintiff's failure to properly respond to discovery requests.  ECF No. 52.  The district judge denied the motion on September 17, 2024.  ECF No. 60.

On May 16, 2025, defendants filed the instant motion for summary judgment, ECF No. 68; to which plaintiff filed an opposition on October 8, 2025, ECF No. 74; and defendants filed a reply on October 20, 2025.  ECF No. 76.  On October 16, 2025, plaintiff filed a Request for Order for Audio / Video Surveillance Evidence, ECF No. 75; and defendants filed an opposition on October 29, 2025.  ECF No. 77.  On December 1, 2025, plaintiff filed a request for settlement conference, ECF No. 78, and defendants filed a response requesting that the request be denied or deferred until after the court rules on summary judgment.  ECF No. 79.

**I.      REQUEST FOR ORDER FOR AUDIO / VIDEO SURVEILLANCE EVIDENCE**

Plaintiff's motion titled, "Request for Order for Audio / Video Surveillance Evidence," seeks an order compelling defendants to produce to plaintiff audio and video recordings of the "excessive force interview" relating to Incident Report No. 7104821 and Appeal No. 141799.  ECF No. 75 at 1.  He states that "this evidence plays a decent part in the plaintiff's evidence

---

[1] Plaintiff alleges the incident occurred at "New Folsom" prison, ECF No. 1 at 1, which is the former name of California State Prison, Sacramento.  *See Cockcroft v. Kirkland*, 548 F. Supp. 2d 767, 771 (N.D. Cal. 2008); *California State Prison, Sacramento, Details & History*, CAL. DEP'T OF CORR. & REHAB. (Jan. 23, 2026), https://www.cdcr.ca.gov/facility-locator/sac; *see also* ECF No. 21 at 1.

against defendant." *Id*. Defendants oppose that request as untimely. ECF No. 77 at 1-2. Defendants also assert that, to the extent plaintiff is requesting surveillance video of the incident forming the basis of the complaint, none exists because surveillance cameras had not been installed in that part of the building at the time. *Id*. at 2. For the reasons set forth below, plaintiff's request is denied.

### A. Legal Standard

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure. In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense— including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b). To obtain documents or electronically stored information, or to conduct an inspection of physical evidence, Rule 34 requires a party to serve a request to the opposing party that describes "with reasonable particularity the item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A).

If a party follows the procedures set forth in the Rules and is not provided with the requested discovery, Rule 37 allows that party to file a motion to compel. Fed. R. Civ. P. 37(a)(1). The party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action. *O'Connor v. Perez*, No. 2:18-CV-1057 DB P, 2020 WL 4748096, at *2 (E.D. Cal. Aug. 17, 2020); *McCoy v. Ramirez*, No. 1:13-cv-1808-MJS (PC), 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016); *Anderson v. Hansen*, No. 1:09-CV-01924-LJO-MJS (PC), 2013 WL 428737, at *1 (E.D. Cal. Feb. 1, 2013); *Ellis v. Cambra*, No. 1:02-cv-5646-AWI-SMS PC, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008). Although pro se litigants in civil rights cases are not

held to the same standard as parties with counsel, *see Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013), a plaintiff must at a minimum "inform[ ] the court of which discovery requests are the subject of his motion to compel," *Waterbury v. Scribner*, No. 1:05-CV-0764-OWW-DLB (PC), 2008 WL 2018432 at *1 (E.D. Cal. May 8, 2008); *see also* Eastern District Local Rule 251(d) ("Each specific interrogatory, deposition question or other item objected to . . . shall be reproduced in full.").

### B.  Discussion

Here, even with the lenity granted pro se litigants in civil rights cases, *see Blaisdell*, 729 F.3d at 1241, plaintiff has not met his burden to justify the court entering an order compelling defendants to produce to plaintiff video of his excessive force interview relative to CDCR Incident Report No. 7104821 and Appeal No. 141799.  Critically, plaintiff's request fails to identify the discovery request to which it relates and, if defendants objected to that request when it was made and why those objections were not justified.  *See Sekona v. Lizarraga*, No. 2:17-cv-0346-KJM-EFB-P, 2019 WL 3887331, at *2 (E.D. Cal. Aug. 19, 2019), *report and recommendation adopted*, No. 2:17-cv-0346-KJM-EFB-P, 2019 WL 5063454 (E.D. Cal. Oct. 9, 2019); *Waturbury*, No. 1:05-cv-0764 OWW DLB PC, 2008 WL 2018432, at *1.  Defendants represent, supported with a declaration from counsel, that although plaintiff made discovery requests of them in writing on November 27, 2022, none of these requests included a request for a video of an excessive force interview for Incident Report No. 7104821 and Appeal No. 141799.  ECF No. 77 at 1-2 & Decl. of Garrett Suell ¶¶ 1-2.  Defendants further argue that the discovery requests made on November 27, 2022, even if they did include a request for the video, were untimely, which defendants communicated to plaintiff by letter on December 19, 2022.  *Id*.  Plaintiff has not addressed these objections in his motion.  *See* ECF No. 75.

Plaintiff also has not explained why the video is relevant to his case, except to state that it "plays a decent part in the plaintiff's evidence against the defendants."  *Id*. at 1.  This statement does not provide the court enough information to allow the court to conclude that the excessive force interview video is, in fact, relevant to plaintiff's claim.  *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401 (relevant evidence is "evidence having any tendency to make the existence of any fact

4

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); *see generally Owen v. Hyundai Motor Am.*, 344 F.R.D. 531, 535 (E.D. Cal. 2023) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).").

For these reasons, plaintiff has not met his burden to show that the court should issue an order compelling production of the recording he requests, and the court therefore denies the motion.

## II.   MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standards

#### 1.  Summary Judgment Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "initially bears the burden of proving the absence of a genuine issue of material fact," *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), which it may meet by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.

////

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa County Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

By notice filed on May 16, 2025, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 68-3 (citing *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc)).

**2.  Unconstitutionally Excessive Force**

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate . . ., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id*. at 9.

**B.  Facts and Evidence**

For purposes of summary judgment, the undersigned finds the following facts are undisputed:

1.  On July 18, 2021, plaintiff was incarcerated at California State Prison, Sacramento, where defendant J. Ware was employed as a correctional sergeant and defendant J. Avila was employed as a correctional officer.  ECF No. 1 at 1-3; ECF No. 21 at 1-2.

2.  Plaintiff is serving a determinate term of eighteen years and is currently housed at California Health Care Facility, Stockton.  ECF No. 68, Seuell Decl. ¶ 3, Ex. B; ECF No. 66.

////

7

3. Plaintiff testified during his November 28, 2022 deposition that "only thing that [he] actually saw [Defendant] Avila do was grab [him] and slam [him] to the ground." ECF No. 68, Seuell Decl. ¶ 3, Ex. A (Pl.'s Dep.) at 19:1-4.

4. Plaintiff testified during his November 28, 2022 deposition that he "didn't see [Defendant] Ware strike[] [him] . . . [and] there's a possibility he did not touch [Plaintiff]." ECF No. 68, Seuell Decl. ¶ 3, Ex. A (Pl.'s Dep.) at 14:9-17:5.

5. On July 18, 2021, Plaintiff received Rules Violation Report (RVR) Log No. 7104821 for violating California Code of Regulations (CCR), title 15, section 3005(d)(1), based on the same incident alleged in Plaintiff's complaint. ECF No. 68, Seuell Decl. ¶ 4, Ex. C at 1-2.

6. On July 24, 2024, a disciplinary hearing on RVR Log No. 7104821 was conducted before Senior Hearing Officer (SHO) Lieutenant D. Hobart Jr. ECF No. 68, Seuell Decl. ¶ 4, Ex. C at 2.

7. Plaintiff refused to attend the hearing and elected not to participate in the adjudication process. ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 2.

8. On July 25, 2024, Plaintiff was found culpable of violating section 3005(d)(1), which prohibits inmates from willfully committing an assault or battery on any person. The SHO found, by a preponderance of the evidence, that nonparty Officer Elizarraras and Defendant Avila were performing their lawful duties by attempting to conduct a cell search when Plaintiff willfully struck Officer Elizarraras in the head and kicked Defendant Avila in the leg, causing injuries to both officers. ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 5.

9. The SHO relied on the written testimony of non-party Officer Elizarraras in the RVR, which stated that Plaintiff struck him in the face with his head. ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 6.

10. The SHO also considered Crime/Incident Report Log No. 25226, authored by Defendant Avila, which reportedly stated that Plaintiff agreed to exit his cell to allow the officers to conduct a cell search, but then struck Officer Elizarraras with his head

8

as he exited the cell. Defendant Avila reportedly assisted Officer Elizarraras with utilizing physical force to stop the attack and force Plaintiff to the ground. While on the ground, Plaintiff reportedly kicked Defendant Avila in the leg. Additional staff reportedly responded and utilized physical force to subdue Plaintiff, overcome Plaintiff's resistance, and take him into custody. Following the incident, Defendant Avila reportedly captured photographs showing injury to Officer Elizarraras' face. ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 6.

11. The SHO also reviewed additional Crime/Incident Reports authored by nonparty Sgt. Baker, non-party CO Harrington, and Defendant Ware, who reportedly observed Plaintiff kicking his feet while he was on the ground—conduct consistent with Defendant Avila's account.  ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 6.

12. The SHO further considered reports authored by non-party Officers Chavez and Draven, who reportedly observed Plaintiff moving his head in an attempt to strike staff while on the ground, consistent with Officer Elizarraras' testimony.  ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 6.

13. The SHO further considered photographic evidence taken by Defendant Avila that reportedly showed bruising and swelling to Officer Elizarraras' face.  ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 6.

14. The SHO further considered the Medical Report of Injury or Unusual Occurrence (CDCR 7219), completed by medical staff, which reportedly documented injuries sustained by Officer Elizarraras and Defendant Avila.  ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 6.

15. Plaintiff did not submit a statement of defense at the hearing.  ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 6.

16. Plaintiff was assessed a 150-day loss of good-time credits. The Chief Disciplinary Officer affirmed both the guilty finding and the 150-day credit loss.  ECF No. 68, Seuell Decl. ¶ 5, Ex. D at 6, 9-10.

////

9

The parties dispute what occurred during the beginning of the cell extraction that, per plaintiff, forms the basis of his complaint.  Plaintiff has declared that, on the date in question, he was on a hunger strike as a form of protest against the prison's lack of programming for EOP inmates.[2] ECF No. 74, Decl. of Paul Thomas ¶¶ 5-8.  On the date in question, per plaintiff,

> During third watch, at approximately 5:00 p.m., Sgt. Ware, Officer Avila, and five or six other correctional officers approached my cell.  Sgt. Ware informed me that because I was on a hunger strike, they had to search my cell for food.  I was about to change and was completely naked when they arrived unannounced.  Officer Avila stuck his hand in the air to notify the tower, and the tower officer opened my cell door.  I took a step back as the cell door opened and said, "What are you doing, I'm naked!"  I was not resisting, I just didn't want to come out of my cell naked, and felt uncomfortable that the officers were asking me to do so.  I started arguing with the officers and asked why I had to come out of the cell.  All of a sudden, Officer Avila reached into the cell and pulled me out by my arms.  He threw me to the ground in front of the cell and said, "stop resisting!"
>
> [] I landed on my stomach, and didn't have time to catch myself from the fall.  My stomach and head came in contact with the ground.  Two of the officers who had approached my cell with Sgt. Ware and Officer Avila held me down while another officer, who I think was Officer Avila, punched me in the face. . . . A big white officer whose name I did not know kneed me in the face multiple time. . . . I was naked and unable to defend myself.  It all happened very fast.  I was in a lot of pain.  I was very scared.  I felt incredibly vulnerable because I was naked and there were so many officers and only one of me.

ECF No. 74, Decl. of Paul Thomas ¶¶ 9-10; *see also* ECF No. 74, Statement of Facts (setting forth similar facts).  In a later deposition, plaintiff testified to similar facts, although he testified that defendant Ware and defendant Avila approached his cell together; defendant Ware observed that plaintiff was naked; plaintiff told defendant Ware that he was naked; and defendant Ware then signaled to the control room to open plaintiff's door, at which point defendant Avila and the other officers attacked plaintiff.  ECF No. 68, Seuell Decl. ¶ 3, Ex. A (Pl.'s Dep.) at 14:1-17:5.  Plaintiff testified that, once he was on the ground, he did not see if defendant Ware struck him.  ECF No. 68, Seuell Decl. ¶ 3, Ex. A (Pl.'s Dep.) at 16:17-17:5.

////

////

---

[2] "EOP" refers to the California Department of Corrections and Rehabilitation's "Enhanced Outpatient Program . . . [which] is for inmates with 'acute onset or significant decompensation of a serious mental disorder.'"  *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1075 (E.D. Cal. 2014)

Defendants admit that a cell extraction was conducted on plaintiff on the date at issue but deny that they physically harmed plaintiff or used excessive force.  ECF No. 21 at 2.  Defendant Ware denies that he instructed the control tower to open plaintiff's cell door in order to inflict harm on plaintiff.  *Id.*

**C. Discussion**

Defendants argue that summary judgment should be granted in their favor pursuant to the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), and that summary judgment should be granted as to defendant Ware due to plaintiff's inability to prove causation.  ECF No. 68 at 5-8.  For the reasons set forth below, defendants have not shown that summary judgment is appropriate on either basis.

**1.  Favorable Termination Rule**

Both defendants seek summary judgment pursuant to the favorable termination rule established in *Heck*, 512 U.S. 477.  In *Heck*, the Supreme Court held,

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 487; *see also Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (citing same).  Subsequently, the Supreme Court expanded this rule to encompass suits where a favorable judgment would necessarily imply the invalidity of a prison disciplinary decision and sanctions therefrom.  *Edwards*, 520 U.S. at 646-48.

The *Heck* rule is narrow.  In *Heck*, the Supreme Court emphasized that, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed."  *Heck*, 512 U.S. at 487 (emphasis in original); *see also Muhammad v. Close*, 540 U.S. 749, 754 (2004) (rejecting "the mistaken view . . . that *Heck* applies categorically to all suits challenging prison disciplinary proceedings"); *Cunningham v. Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (quoting *Heck*, 512 U.S. at 487 n.6) ("In evaluating whether claims are barred by

11

*Heck*, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'").  To resolve the question of "whether success on a section 1983 claim would *necessarily* imply the invalidity of a conviction, [the court] must determine which acts formed the basis for the conviction," *Lemos v. County of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022) (emphasis in original), and, in a suit claiming excessive force, the court "cannot conclude generally that the plaintiff's conviction was based on the entire incident as a whole, such that a finding of excessive force at any time during the incident would necessarily conflict with the conviction." *Martell v. Cole*, 115 F.4th 1233, 1237 (9th Cir. 2024).  The defendant bears the burden to establish the basis for the conviction. *See Sanford v. Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001).

Defendants have not shown that this standard has been met so as to merit summary judgment.  Defendants argue that the July 25, 2024 disciplinary finding necessarily precludes plaintiff's claim.  ECF No. 68 at 7.  In the disciplinary proceeding, plaintiff was found culpable of violating California Code of Regulations, Title 15, Section 3005(d)(1), which provides, "Incarcerated persons shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person."  Battery is defined by California statute as "any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242.  Thus, the offense of battery "has two stated elements: (1) a use of 'force or violence' that is (2) 'willful and unlawful.'" *People v. Miranda*, 62 Cal. App. 5th 162, 173 (2021).  As such, in determining whether plaintiff violated § 3005(d)(1), the hearing officer only determined whether plaintiff willfully and unlawfully used force or violence on another person.  Whether the officers were in the midst of performing their lawful duties at the time of the batteries was not an element of the regulation plaintiff was found culpable of violating; as a matter of law, a person could commit battery against a victim who is acting unlawfully at the time.[3]  Because none of the elements of

---

[3] In contrast, California Penal Code section 243.1 prohibits battery against a custodial officer while "the custodial officer is engaged in the performance of his or her duties."  That language is not included as an element of the regulation plaintiff was found to have violated. *See* Cal. Code of Regs., Title 15, § 3005(d)(1).

12

the regulation plaintiff was found to have violated implicate whether the victim of the battery had utilized excessive force prior to being battered, *Heck* presents no impediment to plaintiff's suit. *See Heck*, 512 U.S. at 487 n.6 (holding § 1983 suits barred only if plaintiff could prevail only by negating "an element of the offense of which he has been convicted").

Defendants' argument appears to hinge on the hearing officer's findings that defendant Avila and Officer Elizarraras "were performing their lawful duties" when plaintiff willfully struck each of them. *See* ECF No. 68-4 at 5. But what has not yet been determined is whether the officers used excessive force in the performance of their duties in the course of the cell extraction. Defendants have not shown, for example, that if the hearing officer intended the quoted statement to be a factual finding, this factual finding was intrinsic to the hearing officer's conclusion that plaintiff had committed two acts of battery. Based on the record before the court, it appears the hearing officer had before him no facts as to whether defendants Ware and Avila used excessive force towards plaintiff while initially subduing him onto the ground, before plaintiff began kicking his feet at defendant Avila. The evidence relied on by the hearing officer was Officer Elizarraras' testimony that he had begun to remove plaintiff from his cell when plaintiff used his head to strike Officer Elizarraras's cheek. ECF No. 68-4 at 1, 6. Per Officer Elizarraras, defendant Avila then "took control of [plaintiff's] right side and forced [plaintiff] to the ground," but Officer Elizarraras had been "unable to see Officer Avila's hand placement on" plaintiff during this event. *Id*. at 1. While Officer Elizarraras and defendant Avila restrained plaintiff on the ground, plaintiff reportedly "actively thrash[ed] side to side and kick[ed] his feet up in the air." *Id*. (statement of Officer Elizarraras). The hearing officer also considered a Crime / Incident Report authored by defendant Avila, in which the latter stated that after Officer Elizarraras had forced plaintiff to the ground, while plaintiff was on the ground he "continued to provide resistance and was able to kick Officer Avila in the leg." *Id*. at 6. The hearing officer also based his determination on Crime / Incident Reports authored by non-parties correctional Sergeant D. Baker and Officer D. Harrington and by defendant Ware, in which they each reportedly "observed [plaintiff] kicking his feet while he was on the ground. Although they did not witness [plaintiff's] feet contact Officer Avila, this is consistent with his testimony." *Id*. Finally, the

13

hearing officer considered a medical report noting injuries to defendant Avila. *Id*.

Ergo, none of these facts relied on by the hearing officer establish what defendants Avila and Ware did to plaintiff when plaintiff was being initially subdued to the ground. This specific part of the event is what forms the basis of plaintiff's complaint; per plaintiff, when defendant Avila assisted Officer Elizarraras in subduing plaintiff, defendant Avila threw plaintiff to the ground so that plaintiff's torso and head hit the ground. ECF No. 74, Decl. of Paul Thomas ¶¶ 9-10. Defendant Avila may have then punched him in the face. *Id*.; *see also* ECF No. 68-4, Ex. A at 17-19 (plaintiff testifies in deposition that, when his cell door opened, defendant Avila grabbed him by the arm and back and slammed him to the floor). Plaintiff asserts that this conduct constituted excessive force, giving rise to his claim against both defendants. *See id*.; ECF No. 1 at 3.

Given this distinction, *Heck* does not bar plaintiff's claim against the defendants. Even if plaintiff unlawfully and willfully used force against defendant Avila by kicking him, and against non-party Elizarraras, a jury could also find that defendants Avila and Ware had utilized unlawfully excessive force earlier in the interaction by Avila slamming plaintiff to the ground and punching him in the head, and by defendant Ware's conduct in facilitating that attack. Because these possibilities are not mutually exclusive as a matter of law or fact, *Heck* cannot bar plaintiff's claim. *See Hooper*, 629 F.3d at 1134; *see, e.g., Collins v. Kurgan*, No. 2:23-CV-1600 CSK P, 2025 WL 3514159, at *1-8 (E.D. Cal. Dec. 8, 2025); *Stevenson v. Holland*, No. 1:16-cv-01831-AWI-JLT, 2020 WL 264422, at *15 (E.D. Cal. Jan. 17, 2020). Defendants therefore have not shown that summary judgment is merited on this basis.

### 2. Causation as to Defendant Ware

Defendant Ware also moves for summary judgment on the basis that there is no admissible evidence that he caused any harm to plaintiff because plaintiff "concedes that he did not witness Defendant Ware strike or even touch him" and "cannot identify any specific conduct by Defendant Ware that would constitute excessive force." ECF No. 68 at 8. Defendant Ware further argues that he cannot be liable solely on a theory of respondeat superior. *Id*.

////

14

Defendant Ware's argument is unavailing. "A supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798-99 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018), and *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ). "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal quotation marks and citations omitted) (alterations in original). Accordingly, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208); *see also Rodriguez*, 891 F.3d at 798.

Here, there is admissible evidence from which a jury could find defendant Ware liable for his role in the alleged excessive force experienced by plaintiff. Plaintiff testified in his deposition that defendants Ware and Avila approached his cell door together on the day in question, and defendant Ware saw that plaintiff was naked and plaintiff exclaimed to him that he was naked. ECF No. 68, Seuell Decl. ¶ 3, Ex. A (Pl.'s Dep.) at 14:1-17:5. Plaintiff testified that, despite defendant Ware knowing plaintiff was naked at the time, defendant Ware signaled for the control tower to open the cell door. *Id*. Defendant Avila then immediately attacked plaintiff, then other correctional officers attacked him, and defendant Ware did not intervene. *Id*. Plaintiff believed that defendant Ware was motived by the same retaliatory animus against him that defendant Avila also possessed. *Id*. Crediting plaintiff's testimony, *see Walls*, 653 F.3d at 966, a factfinder could find that defendant Ware had acted in concert with defendant Avila and signaled to the control tower to open plaintiff's cell door in order to permit defendant Avila to batter plaintiff. If plaintiff's testimony is credited at trial, a factfinder could also find that defendant Ware's presence while correctional officers were battering plaintiff and his decision not to intervene or to

15

attempt to control his subordinates itself constituted a proximate cause of the deprivation of plaintiff's Eighth Amendment rights. *See Rodriguez*, 891 F.3d at 798-99; *Starr*, 652 F.3d at 1207-08; *see, e.g., Pizzuto v. Cnty. of Nassau*, 239 F. Supp. 2d 301, 310 (E.D.N.Y. 2003) (on similar facts, granting summary judgment in favor of plaintiff against correctional officer defendant). On this record, therefore, defendant Ware has not shown that there is no genuine issue of material fact on the question of causation and the undersigned recommends his motion be denied. *See Celotex Corp.*, 477 U.S. at 323.

## CONCLUSION AND ORDER

Accordingly, it is hereby ORDERED that Plaintiff's Request for Order for Audio / Video Surveillance Evidence (ECF No. 75) is denied.

It is further RECOMMENDED that Defendants' Motion for Summary Judgment (ECF No. 68) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 12, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE